**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

LEO MARQUEZ and CONNIE
MARQUEZ, as next best friend to
ATHENA MARQUEZ,

      Plaintiffs,

v.                                                                                      No. CIV O3-917 BB/RLP

MESA VISTA CONSOLIDATED SCHOOLS,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court for consideration of Defendant Mesa Vista Consolidated Schools' Motion for Summary Judgment, filed May 17, 2004 (Doc. 21). The Court has reviewed the submissions of the parties and the relevant law, and, for the reasons set forth below, finds that Defendants' motion will be GRANTED in part and DENIED in part.

**I.  BACKGROUND**

This case arises from Athena Marquez' ("Marquez") suspension from class at Defendant Mesa Vista Consolidated Schools ("Mesa Vista"). Marquez was a ninth grade student at Mesa Vista during the 2001-2002 academic year. Prior to the incident at issue in this matter, Marquez was an exemplary student who maintained a 4.0 G.P.A., served as class president, and participated in several extra-curricular activities including Volleyball, Basketball and Track.

On Tuesday, November 20, 2001 Marquez attended her fourth period health class. During the class, several students, including Marquez, succeeded at setting off one of the classroom sprinklers. Marquez' role and level of participation in this event are in dispute.

However, it is undisputed that at least three other male students, Anthony Valdez, Dennis Valdez and Ivan Gallegos played a significant role in activating the sprinkler system.  The students made multiple attempts at setting off the sprinkler, and at least one of the other male students lit a piece of paper on fire.  Def.'s Mot. S.J., at Ex. 4 and Ex. 1 pg. 24 (filed May 17, 2004); Pls. Res., at Ex. 1, pg. 25 (filed July 16, 2004).  When this proved unsuccessful, Marquez wrapped a piece of toilet paper around the sprinkler, Pls. Res., at Ex. 1, pg. 28-29, and one of the students lit the toilet paper on fire.  Marquez denies that she lit the paper.  *Id*.  This fire activated the sprinkler system and caused significant damage to the classroom.

That afternoon, Principal Michael Chavez ("Principal Chavez") conducted an investigation of the incident.  The extent of the investigation is in dispute, but, at a minimum, Principal Chavez interviewed Marquez, Anthony Valdez, Dennis Valdez and two other female students.  Pls. Res., at Ex. 1, pg. 52-54.  Marquez was interviewed last and was told that the other students named her as the one responsible for lighting the last piece of toilet paper.  Marquez denied this charge to Principal Chavez and explained the role of the other male students.  Nevertheless, Principal Chavez informed Marquez that she would be suspended for 10 days effective immediately.  No disciplinary action was taken against any of the male students involved.

Upon learning of the suspension, Athena Marquez' parents, Leo and Connie, contacted Principal Chavez and were granted a meeting the next day.  Prior to the meeting, the Marquez family reviewed the Mesa Vista Student Handbook which contained explanations and procedures for student suspensions.  At the meeting on Wednesday, November 21, the parties discussed these suspension procedures and Principal Chavez explained his reasons for suspending Marquez.  Over

the protests of Leo and Connie Marquez, Principal Chavez refused to reduce Athena's suspension.

The following week, Leo and Connie Marquez met with Interim Superintendent Nelson O. Gonzales ("Superintendent Gonzales"). Superintendent Gonzales agreed that Athena Marquez' punishment was too severe, and he reduced it to an in-school suspension. Def.'s Mot. S.J., at Ex. 9. Teachers were informed that they were to accept Marquez' school work for November 21, 26 and 27, the days that she missed because of her out-of-school suspension.

Although it is not clear from the submissions of the parties, it appears that Marquez returned to school on Wednesday, November 28 and reported to in-school suspension. In-school suspension is a punishment in which the student is not permitted to attend classes. Instead, she reports to a special designated classroom where she is permitted to do school work, but only receives 75% credit. Pls. Res., at Ex. 11. Marquez' in-school suspension was scheduled to last until Friday, December 7. *See* Def.'s Mot. S.J., at Ex. 8, 9. However, the evidence shows that she reported to in-school suspension on Monday, December 10, and did not return to regular classes until Tuesday, December 11. Def.'s Rep., at Ex. 16.

Subsequently, Marquez brought this suit seeking damages for violation of her substantive and procedural due process rights, equal protection, and Title IX.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In evaluating a motion for summary judgment, the court

views the evidence and draws all reasonable inferences therefrom in the light most favorable to the nonmoving party. *See Martin v. Kansas*, 190 F. 3d 1120, 1129 (10th Cir. 1999). However, it is "not required to evaluate every conceivable inference which can be drawn from evidentiary matter, but only reasonable ones." *Lucas v. Dover Corp.*, 857 F.2d 1397, 1401 (10th Cir. 1988). Summary judgment is inappropriate if disputes remain as to material facts. *See James Barlow Family Ltd. Partnership v. David M. Munson, Inc.*, 132 F. 3d 1316, 1319 (10th Cir. 1997). An issue of fact is "material" if it is essential to the proper disposition of the claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In essence, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*.

### III.  DISCUSSION

Marquez brings the following claims against Mesa Vista:  (1) violation of procedural due process; (2) violation of her substantive due process rights; (3) unlawful discrimination in violation of Title IX; and (4) violation of her equal protection rights.  Mesa Vista argues that it is entitled to summary judgment on all of these claims.  As discussed below, the Court denies summary judgment on the Title IX discrimination and equal protection claims, but grants summary judgment on the procedural and substantive due process claims.

**A.     Procedural Due Process**

Mesa Vista initially argues that it is entitled to summary judgment on Marquez' claim of a violation of procedural due process.  According to Mesa Vista, it provided the minimum process necessary because Marquez received notice of the charges against her, and she had an opportunity to be heard.

In order for procedural due process to apply, Marquez must have a protected property interest in her education. *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972). Property interests are created and their dimensions defined by state law. *Id.* at 577. Although education is not a fundamental right guaranteed by the United States Constitution, "the State is constrained to recognize a student's legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause and which may not be taken away for misconduct without adherence to the minimum procedures required by the Clause." *Goss v. Lopez*, 419 U.S. 565, 574 (1975). Thus, Marquez does have a general property interest in receiving a public education. However, a de minimis deprivation of property is not protected by the Due Process Clause. *Id.* at 576. "De minimis or trivial deprivations of liberty in the course of disciplining of a student do not implicate procedural due process requirements." *Hassan v. Lubbock Independent School Dist.*, 55 F.3d 1075, 1081 (5th Cir. 1995).

In *Goss v. Lopez*, the Supreme Court addressed the process necessary for a 10 day out-of-school suspension. 419 U.S. 565. The Court held that an out-of-school suspension was not de minimis and implicated the Due Process Clause. *Id.* at 574. *Goss* does not answer the question, however, of whether an *in-school* suspension implicates the Due Process Clause. Some courts have found that it does not. *See, e.g., Wise v. Pea Ridge School Dist.*, 855 F.2d 560, 563 at n. 3 (8th Cir. 1988); *Fenton v. Stear*, 423 F. Supp. 767 (W.D. Penn. 1976) (three day in-school suspension plus eleven day probation did not implicate a students property rights).

In the present case, however, two factors convince the Court that Marquez' property rights were implicated. First, there is evidence to suggest that the procedure for in-school suspensions at Mesa Vista dictated that Marquez was only able to receive 75% of the total

5

possible credit for the work that she completed while on in-school suspension. Second, there is a factual dispute over the length and nature of the suspension. Mesa Vista points to the official notice of suspension to argue that the suspension lasted only 10 days, from Monday, November 27 until Friday, December 7. It is uncontested, however, that Marquez was not permitted to attend classes on Wednesday, November 21, the day after the incident occurred. Moreover, additional evidence suggests that Marquez inadvertently spent an additional day attending in-school suspension on Monday, December 10. This evidence indicates that the total length of Marquez' suspension was 12 days. Further, like the punishment at issue in *Goss*, three of these days, November 21, 26, and 27, were spent on out-of-school suspension, as opposed to in-school suspension. For this reason, the Court finds that Marquez' property rights were implicated, and Marquez was entitled to receive at least the minimum process required by the Due Process Clause.

In *Goss,* the Supreme Court set the standard for the procedural due process owed to students facing short-term out-of-school suspensions:

> Due process requires, in connection with a suspension of 10 days or less, that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story.

419 U.S. at 581.

Marquez argues that the standard for suspensions of 10 days or less set forth in *Goss* does not apply here because there is a factual dispute over the length of the suspension. As discussed above, however, only three of these days were spent on out-of-school suspension. The remainder were spent on in-school suspension. While on in-school suspension, Marquez was permitted to

attend school and work on her class assignments. This punishment alone did not further implicate her property rights and did not entitle her to additional process. *See Hayes v. Unified School Dist. No. 377*, 669 F.Supp 1519, 1528 (D. Kan. 1987) (in-school suspension of up to five days by placing special education student in three foot by five foot room did not violate the Due Process Clause), *reversed and remanded on other grounds*, 877 F.2d 809 (10th Cir. 1989). Thus, the due process standard set out in *Goss* for short-term suspensions applies to the present case.

It is undisputed that Principal Chavez interviewed at least five students regarding the incident in question. Marquez met with Principal Chavez prior to being suspended and was informed of the charges against her. In addition, Principal Chavez discussed the matter at length with Marquez' parents the day following her suspension. When they were not satisfied, Marquez' parents met with Superintendent Gonzales and convinced him to lower the initial punishment to in-school suspension. Finally, written notice of the original suspension and of Superintendent Gonzales' subsequent action was mailed to the Marquez household. In sum, Marquez received notice of the charges against her, was permitted to review the evidence, and had the opportunity to be heard. Her procedural due process rights were not violated, and summary judgment on this claim is granted.[1]

---

[1] *See Keough v. Tate County Bd. of Educ.*, 748 F.2d 1077, 1080 (5th Cir.1984) (where student discussed disciplinary infractions with principal and was given the choice of a paddling or a ten day suspension, and he chose the suspension, the "informal give-and-take sessions" between the two met the procedural due process requirements for short-term suspensions); *Baxter v. Round Lake Area School*, 856 F.Supp. 438 (N.D.Ill.1994) (due process requirements satisfied where student was taken to dean's office and given a chance to present his side of the story and was given notice of the charges against him); *Hill v. Rankin County*, 843 F.Supp. 1112 (S.D.Miss.1993) (*Goss* requirements satisfied where principal questioned student about altercation); *Bystrom v. Fridley High Sch.*, 686 F.Supp. 1387 (D.Minn.1987) (students received process due them where, prior to suspension, they met and discussed matters with the assistant principal); *Boster v. Philpot*, 645 F.Supp. 798 (D.Kan.1986) (where students admitted to

**B.      Substantive Due Process**

Next, Mesa Vista argues that it is entitled to summary judgment on Marquez' claim of a violation of her substantive due process rights because the facts do not rise to the level necessary to sustain such a claim. This Court agrees.

Courts should uphold a "school's decision to suspend a student in the face of a substantive due process challenge if the decision is not arbitrary, lacking a rational basis, or shocking to the conscience of federal judges." *Butler v. Rio Rancho Public Schools Bd. of Educ.*, 341 F.3d 1197, 1200-1202 (10th Cir. 2003). The Tenth Circuit Court of Appeals has stated that "the standard for judging a substantive due process claim is whether the challenged government action would 'shock the conscience of federal judges.'" *Uhlrig v. Harder*, 64 F.3d 567, 573 (10th Cir. 1995) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 126 (1992).

> To satisfy this standard, a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power. Instead, a plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking.

*Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504 (10th Cir. 1998) (internal quotation omitted).

---

principal their involvement in vandalism, due process did not require that they be given an opportunity to present their side of the story); *Darby v. Schoo*, 544 F.Supp. 428 (W.D.Mich.1982) (students were afforded a *Goss*-type hearing where they met with assistant principal and had opportunity to explain their involvement in incident); *Pegram v. Nelson*, 469 F.Supp. 1134 (M.D.N.C.1979) (procedures followed by principal were fully in accord with *Goss* where he gave opportunity to student to explain his version of the incident and later discussed the matter with student and his father); *Davis v. Central Dauphin Sch. Dist. Sch. Bd.*, 466 F.Supp. 1259 (M.D.Pa.1979) (procedural due process met where at meeting with principal, student was aware of charges against him and had ample opportunity to present his version of the incident); *Coffman v. Kuehler*, 409 F.Supp. 546 (N.D.Tex.1976) (due process was afforded student where he met principal and presented his defense).

The conduct alleged by Marquez simply does not rise to the level of being arbitrary or shocking to the conscience. *See Butler*, 341 F.3d 1197 (year long suspension for student who drove a car to school that contained a weapon was not violation of substantive due process); *Alabama and Coushatta Tribes of Texas v. Trustees of the Big Sandy Independent School Dist.*, 817 F. Supp. 1319 (E.D. Tex. 1993) (in-school suspension of students for up to one month did not violate substantive due process). Accordingly, Mesa Vista's motion for summary judgment on the issue of substantive due process is granted.

**C.     Title IX**

Third, Mesa Vista seeks summary judgment on Marquez' claim of gender discrimination brought under Title IX. Title IX provides that "[n]o person . . . shall, on the basis of sex, . . . be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681 (a). In *North Haven Board of Education v. Bell*, 456 U.S. 512 (1982), the Supreme Court expressly recognized that "Title IX proscribes gender discrimination [against students] in education programs or activities receiving federal financial assistance." *Id.* at 514. Moreover, Title IX "has been construed to provide an implied cause of action to an aggrieved individual." *Gossett v. Oklahoma ex rel. Bd. of Regents for Langston Univ.*, 245 F.3d 1172, 1176 (10th Cir. 2001) (citation omitted). "Courts have generally assessed Title IX discrimination claims under the same legal analysis as Title VII claims." *Id*.

Under Title VII, a claim of unlawful discrimination can be proven through either direct or circumstantial evidence. *Kendrick v. Penske Transp. Services, Inc.,* 220 F.3d 1220, 1225 (10th Cir.2000) (citing *Shorter v. ICG Holdings, Inc.* 188 F.3d 1204, 1207 (10th Cir.1999) and *Elmore v. Capstan, Inc.,* 58 F.3d 525, 529 (10th Cir.1995)). Such a claim can survive summary

judgment only where the plaintiff has presented sufficient evidence to show there is a genuine issue of material fact pertaining to whether the plaintiff's gender actually motivated the allegedly discriminatory conduct. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 141 (2000); Fed.R.Civ.P. 56(c).

In determining whether the circumstantial evidence presented by the plaintiff in a given case is sufficient to establish a genuine issue of material fact, the Supreme Court has directed the application of the burden-shifting framework established in *McDonnell Douglas Corp. v. Green.* 411 U.S. 792, 802-05 (1973). The *McDonnell Douglas* framework comprises three burden-shifting steps. Initially, the burden rests with the plaintiff to establish a prima facie case of gender discrimination. *Id.* at 802. If the plaintiff has established a prima facie case, the burden then shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for its action. *Id.* Finally, if the defendant articulates a nondiscriminatory reason, the burden shifts back to the plaintiff to show the proffered reason is merely a pretext for racial discrimination. *Id.* at 804. Where the parties have satisfied their respective burdens under the *McDonnell Douglas* framework, summary judgment is ordinarily inappropriate. *Reeves,* 530 U.S. at 148.

In this case, Mesa Vista contends that Marquez is unable to establish a prima facie case. It bases this contention on two separate arguments. First, Mesa Vista argues that Marquez can not establish a prima facie case of discrimination because she has not shown any evidence that gender motivated Mesa Vista's acts. This argument misconstrues the *McDonnell Douglas* framework. To carry the initial burden of establishing a prima facie case, Marquez must either present direct evidence of intentional discrimination, or circumstantial evidence sufficiently strong to raise an inference that Mesa Vista's conduct was motivated by discriminatory animus. *McDonnell*

*Douglas Corp.*, 411 U.S. at 802-05.  Mesa Vista's argument appears to be equivalent to an assertion that Marquez has not presented any direct evidence of discrimination.  While this may be true, as discussed below, Marquez is able to meet her prima facie burden through circumstantial evidence.

Next, Mesa Vista argues that Marquez cannot meet her prima facie burden because she cannot show that she was treated differently than similarly situated male students.  In order for Marquez to establish a prima facie case of discrimination through circumstantial evidence, it is enough for her to show that she is a member of a protected class, that she suffered an adverse action, and that similarly situated non-members of the protected class were treated more favorably.  *McDonnell Douglas*, 411 U.S. at 802-04.  Mesa Vista does not dispute that Marquez is a female and a member of a protected class, or that she suffered an adverse action.  Rather, it challenges Marquez' prima facie showing because it argues that she was not treated differently than similarly situated males.  In essence, Mesa Vista argues that the boys are not similarly situated because Principal Chavez determined that Marquez was solely responsible for lighting the final piece of tissue paper on fire.  It follows, Mesa Vista contends, that Principal Chavez acted reasonably in treating Marquez differently.

However, this reasoning is problematic in two respects.  First, there is a factual dispute over the evidence from which Chavez concluded Marquez was actually responsible for lighting the final piece of tissue paper on fire.  Thus, summary judgment is inappropriate on this basis. Moreover, the Court is not convinced that the group of similarly situated individuals can be defined as narrowly as Mesa Vista argues.   It is uncontested that at least four male students played a significant role in attempting to activate the sprinkler, including at least one other male

11

student who lit a piece of paper on fire. Def.'s Mot. S.J., at Ex. 4 and Ex. 1 pg. 24; Pls. Res., at Ex. 1, pg. 25. For the purposes of the *McDonnell Douglas* test, it is not significant that Marquez may have been the only student to actually succeed at activating the sprinkler. Rather all four of the students, including Marquez' three male counterparts, conspired to set off the sprinkler, and they are all equally culpable. Thus, the male students are "similarly situated" under the prima facie test. *See McGuinness v. Lincoln Hall*, 263 F.3d 49, 53-54 (2d Cir. 2001); *Lynn v. Deaconess Med. Center-West Campus*, 160 F.3d 484, 487-88 (8th Cir. 1998). Because Marquez was the only female and the only student punished, the three male students were treated more favorably, and Marquez has met her burden in establishing a prima facie case.

Under the *McDonnell Douglas* test, the burden shifts to Mesa Vista to articulate non-discriminatory reasons for its actions. It offers two such reasons. First, Mesa Vista reiterates that Marquez was suspended because Principal Chavez determined that she was the only student to succeed at activating the sprinkler. Second, Mesa Vista contends that, rather than being motivated by gender, Principal Chavez singled out Marquez because she was an athlete and an honor student.

The burden re-shifts back to Marquez to offer evidence that the proffered reasons are pretextual. A plaintiff demonstrates pretext either by showing that a discriminatory reason more likely motivated the defendant's decision or that the defendant's proffered explanation is unworthy of belief. *Marx v. Schnuck Mkts., Inc.*, 76 F.3d 324, 327-28 (10th Cir. 1996). "Evidence sufficient to raise a fact issue on whether a defendant's proffered explanation is pretextual may take a variety of forms, including evidence that the defendant treated the plaintiff differently from others who were similarly situated . . . ." *Gossett v. Oklahoma ex rel. Bd. of*

12

*Regents for Langston Univ.*, 245 F.3d 1172, 1177 (10th Cir. 2003).  As discussed above, the evidence that Marquez conspired with three male students who played significant roles in the incident undercuts Mesa Vista's first proffered reason.  Furthermore, there is evidence to suggest that Mesa Vista's second proffered reason is, likewise, questionable.  Mesa Vista argues that Principal Chavez sought to make an example of Marquez, regardless of her gender, because she was an athlete and an honor student.  However, there is uncontested evidence that Principal Chavez was lenient on student athletes the previous year.  Specifically, several boys were caught on school grounds with marijuana.  Rather than subject the boys to long suspensions, such as the one that Marquez faced, Principal Chavez imposed a lighter sentence that allowed them to participate in their sport.  Def.'s Mot. S.J., at Ex. 13, pg. 64.  This evidence calls into question Mesa Vista's proffered non-discriminatory explanation.  The Tenth Circuit has explained that summary judgment for a defendant in a discrimination case is not appropriate where the plaintiff has produced evidence that the proffered explanation was pretextual.  *See Doebele v. Sprint*, 342 F.3d 1117, 1135-36 (10th Cir. 2003) ("the plaintiff need not show both that the defendant's reasons were a pretext and that the real reason was discrimination – the fact of pretext alone may allow the inference of discrimination); *Townsend v. Lumbermens Mutual Casualty Co.*, 294 F.3d 1232, 1241 (10th Cir. 2002).  The Court finds that the evidence of the involvement of other male students in activating the sprinkler, and the lenient punishments for previous student athletes, is sufficient to create an issue of fact over whether Marquez' suspension was pretextual.

For these reasons, summary judgment is not appropriate on Marquez' claim of Title IX discrimination, and the motion is denied.[2]

**D.       Equal Protection**

Finally, Mesa Vista seeks summary judgment on Marquez' claim of a violation of her equal protection rights. According to Mesa Vista, summary judgment is warranted because Marquez was not "similarly situated" to the male students, and at any rate its actions rationally furthered a legitimate state interest.

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. The equal protection requirement "keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike. *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). To succeed on an equal protection claim, Marquez must first demonstrate that she has been treated differently from others with whom she is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination. *Veney v. T.V. Wyche*, 293

---

[2]In addition to the issues addressed above, Mesa Vista further contends that summary judgment is warranted on Marquez' Title IX claim because it was not deliberately indifferent to Marquez' discrimination. Under Title IX, a school is not liable for the acts of its employee unless it has actual notice of the employee's discrimination and it displays deliberate indifference to the discrimination. *Gebser v. Lago Vista Independent School Dist.*, 524 U.S. 274, 292 (1998). In the present case, it is uncontested that Mesa Vista had actual notice of the alleged discrimination, but Mesa Vista argues that it was not deliberately indifferent to the discrimination. The Court disagrees. After her initial suspension, Marquez' parents met with the acting superintendent and two member of the Mesa Vista School Board. On each of these occasions, they discussed the perceived unfairness of Marquez' suspension. Assuming for the moment that Mesa Vista's actions constituted unlawful discrimination, it actively participated in discriminating against Marquez by upholding her suspension and failing to punish the male students.

F.3d 726, 730-31 (4th Cir. 2002). If she makes this showing, the Court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny. *Id.*

The Tenth Circuit applies the *McDonnell Douglas* burden-shifting analysis to equal protection claims in order to determine whether a plaintiff has been treated differently from others with whom she is similarly situated. *See Salguero v. City of Clovis*, 366 F.3d 1168, 1175 (10th Cir. 2004); *Burns v. Bd. of County Commissioners of Jackson County*, 330 F.3d 1275, 1283 (10th Cir. 2003). As discussed above, under this analysis, Marquez has met her present burden.

Mesa Vista next argues that, notwithstanding the analysis under the *McDonnell Douglas* test, the disparity in treatment of Marquez was justified by the requisite level of scrutiny. However, Mesa Vista incorrectly identifies the applicable level of scrutiny as "rational basis." Rational basis scrutiny applies to classifications that do not jeopardize the fundamental rights of a suspect class. *See Goetz v. Glickman*, 149 F.3d 1131, 1140 (10th Cir. 1998). That is not the situation here. Rather, federal courts review equal protection challenges to gender-based classifications under the intermediate scrutiny test. *Rowley v. Members of the Bd. of Educ. of the St. Vrain Valley School Dist.*, 863 F.2d 39, 40 (10th Cir. 1988) (citing *Craig v. Boren*, 429 U.S. 190 (1976)). Under the intermediate scrutiny test, a gender-based classification "must serve important governmental objectives and must be substantially related to achievement of those objectives." *Id.* To meet its burden of demonstrating an important governmental interest, a defendant "must show that the gender based measures . . . were based on 'reasoned analysis rather than through the mechanical application of traditional, often inaccurate assumptions.'" *Concrete Works of Colorado, Inc. v. City and County of Denver*, 321 F.3d 950, 959 (quoting *Miss. Univ. for Women v. Hogan*, 458 U.S. 718, 726 (1982)). For example, to meet its burden

15

under the intermediate scrutiny test, a local government "must demonstrate some past discrimination against women" that an ordinance seeks to remedy. *See Ensley Branch, NAACP v. Seibels*, 31 F.3d 1548, 1580 (11th Cir. 1994).

In the present matter, Mesa Vista has not met its burden under the intermediate scrutiny test. It has not identified the important governmental objective that the disparity in treatment of Marquez sought to serve, and it has not shown that the gender based measures "were based on reasoned analysis rather than through the mechanical application of traditional, often inaccurate assumptions." *Concrete Works*, 321 F.3d at 959. For this reason, summary judgment on Marquez' claim of a violation of her equal protection rights is denied.

## IV.  CONCLUSION

For the reasons set forth above, the Court finds that summary judgment be granted in part and denied in part.

## V.  ORDER

**IT IS ORDERED** that Defendants' Motion for summary judgment be DENIED as to Marquez' claims of Title IX gender discrimination and equal protection. **IT IS FURTHER ORDERED** that summary judgment be GRANTED for the procedural due process and substantive due process claims.

**DATED** at Albuquerque this 31st day of August, 2004.

_____
BRUCE D. BLACK
United States District Judge

**Attorneys:**

For Plaintiff:

>   Gilbert J. Vigil
>   1615 Central Avenue
>   Albuquerque, NM  87104

For Defendants:

>   Nancy E. Nicerson
>   Coppler & Mannick, P.C.
>   645 Don Gaspar Avenue
>   Santa Fe, NM  87505